KYLE JAMES GREEN,
*Petitioner-Appellant,*

*v.*

Steve FRANKE,
Superintendent,
Two Rivers Correctional Institution,
*Defendant-Respondent.*

Umatilla County Circuit Court
CV110230; A150877

323 P3d 321

Jason E. Thompson argued the cause for appellant. With him on the brief was Ferder Casebeer French & Thompson, LLP.

Jeremy Rice, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Shannon T. Reel, Assistant Attorney General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

Petitioner appeals a judgment denying him post-conviction relief. A jury found petitioner guilty of 18 various counts of illegal sexual conduct involving nine different minor victims. In this appeal he asserts that he was denied his Oregon and federal constitutional rights to the adequate assistance of counsel during trial. Petitioner maintains that he was denied the adequate assistance of counsel in seven different respects; we write to address only his assertion that constitutionally adequate counsel would have requested a jury instruction prohibiting the jurors from finding that petitioner had acted in conformity with his apparent propensity to sexually assault minors. *See* OEC 404(3). For the following reasons, we agree with petitioner that the post-conviction court erred in several respects.

## I. FACTUAL BACKGROUND

The facts are not in dispute. In case number 07-01306, a grand jury indicted petitioner on 20 counts arising out of alleged sexual contacts—some consensual and some nonconsensual—between petitioner and eight different victims over a period of several years. In case number 08-00213, defendant was accused of one count of first-degree rape and one count of second-degree sexual abuse arising from one incident with a ninth victim. The two cases were joined for trial.[1] Each of the incidents allegedly occurred at a place and time distinct from each of the others. Each of the victims was under age 18 at the time of the alleged crimes.

At the beginning of the trial, among other instructions, the court told the jury that "[y]ou may draw any reasonable inference from the evidence, but you must not engage in guesswork or speculation." Each of the nine victims testified at trial. Although we discuss the specific charges in

---

[1] The state moved to dismiss four of the charges before trial. Defendant went to trial on the remaining 18 counts: five counts of first-degree rape, ORS 163.375; six counts of second-degree sexual abuse, ORS 163.425; two counts of third-degree rape, ORS 163.355; three counts of third-degree sexual abuse, ORS 163.415; one count of third-degree sodomy, ORS 163.385; and one count of misdemeanor contributing to the sexual delinquency of a minor, ORS 163.435. In this opinion, references to counts refer to case number 07-01306 unless otherwise noted.

more detail below, it is helpful to briefly outline the contours of the state's case and petitioner's defenses with regard to each victim.

A. *The charges and defenses*

1. *RM*

Petitioner was charged with one count of first-degree rape by forcible compulsion and one count of second-degree sexual abuse; both charges arose from a single incident. The state's evidence on those counts consisted of RM's account of petitioner forcibly raping her and witness testimony corroborating that RM had been alone with petitioner. In closing argument, petitioner's counsel suggested that petitioner and RM had not engaged in any sexual contact.

2. *JA*

Petitioner was charged with one count of first-degree rape by forcible compulsion and one count of second-degree sexual abuse relating to a single incident. The state's only evidence was JA's account of the incident. Petitioner called witnesses whose testimony contradicted JA's account in significant respects. In closing argument, petitioner's counsel maintained that petitioner and JA had never had any sexual contact.

3. *BB*

Petitioner was charged with two counts of third-degree sexual abuse arising from a single incident. The state's only direct evidence of the incident was BB's testimony. At trial, petitioner's counsel called a witness who testified that BB had admitted to fabricating the allegations against petitioner. Petitioner's counsel did not specifically address the charges pertaining to BB in his closing argument.

4. *SB*

Petitioner was tried on two counts of first-degree rape and two counts of second-degree sexual abuse arising out of two separate incidents. The state's evidence was based on SB's testimony about the incidents. At trial, petitioner's counsel called a witness that stated she had heard sounds

consistent with consensual sex between SB and petitioner during one of the incidents. In closing argument, petitioner's counsel conceded that petitioner had engaged in sexual contact with SB, but denied that petitioner had forcibly compelled SB to have sex.

### 5. *KH*

Petitioner was tried on one count of first-degree rape by forcible compulsion and one count of second-degree sexual abuse. In closing argument, petitioner's counsel admitted that there had been criminal sexual contact between petitioner and KH, but denied that petitioner had forcibly compelled her to have sex.

### 6. *DH*

Petitioner was charged with one count of second-degree sexual abuse and one count of third-degree sexual abuse relating to a single incident. Petitioner's counsel put on no evidence to counter DH's testimony that petitioner had sexually touched her without her consent; counsel also did not make any specific arguments to the jury about the charges pertaining to DH.

### 7. *MZ*

Petitioner was charged with one count of third-degree sodomy and one count of third-degree rape. In closing argument, petitioner's counsel specifically conceded that petitioner had committed the charged crimes with respect to MZ. The charges pertaining to MZ were the only ones for which the state introduced physical evidence inculpating petitioner.

### 8. *KN*

Petitioner was charged with one count of third-degree rape; petitioner's counsel conceded to the jury that defendant was guilty of that charge.

### 9. *CO*

Petitioner was charged with one count of contributing to the sexual delinquency of a minor, the only misdemeanor charge in the combined case. As with the charge pertaining to KN, petitioner conceded his guilt at trial.

B.  *Closing argument and jury instructions*

As noted, all of the charges were tried to the jury in a single trial. In its closing argument, the state acknowledged that the determination of the disputed factual questions revolved around assessments of credibility:

> "Now, in hearing from many of the victims, it's a matter of assessing credibility. And when you go into the jury room to deliberate, we're not asking you to leave your common sense outside the door. We ask you to draw upon your experience as human beings in assessing credibility."

After explaining generally why the jury should find the victims credible, the state also explained, one by one, why the jury should find each victim credible. Referring to evidence that petitioner had attempted to influence the testimony of certain witnesses, the state argued that, "when you look at [petitioner's] statements during the course of this trial, and of the investigation, and his tampering with witnesses, they really give you insight into his sexual assaults. And they parallel his predatory nature." The state continued:

> "This is all an issue of power and control. That is the overwhelming thing is power and control on behalf of [petitioner].
>
> "Now, look at the patterns of sexual assault by the [petitioner]. He's assaulting victims while they're sleeping and vulnerable. [SB] and [DH].
>
> "He takes the victims by swift attack. [RM], [JA], and [KH].
>
> "He takes the victims through manipulation or subtle forms of coercion. [BB] and [KN].
>
> "He offers reassurance to each victim, or tries to make them believe that they want it."

After listing the dates of the alleged attacks, the state argued, "Now, during his—you know, he had a little break here in 2004 and 2005, but he's pretty consistent otherwise." Finally, the state also argued, "What are the chances that you're going to have nine people coming before you, six disclosing nonconsensual sexual touching, with the varied backgrounds, with the same theme of manipulation, deceit, and coercion? What are the chances?"

At the conclusion of closing arguments, the trial court gave, among others, the following jury instructions:

"And there are two types of evidence. One is direct evidence, such as the testimony of an eyewitness. And the other is circumstantial evidence, which is the proof of a chain of circumstances pointing to the existence or nonexistence of a certain fact. You may base your verdict on direct evidence or on circumstantial evidence, or on both.

"* * * * *

"In deciding this case, you may draw inferences and reach conclusions from the evidence, if your inferences and conclusions are reasonable and are based on your common sense and experience."

The jury convicted petitioner on all 18 counts, and the trial court sentenced him to 400 months in prison. He appealed the resulting judgment to this court and we summarily affirmed it. The Supreme Court denied review.

In the present action, petitioner sought post-conviction relief, alleging, *inter alia*, that he received constitutionally inadequate counsel based on the failure to request a jury limiting instruction; the post-conviction court denied his petition. This timely appeal followed.

## II. ANALYSIS

Petitioner contends that he was denied adequate assistance of counsel in violation of both Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution. "We review the post-conviction trial court's legal conclusions for errors of law." *Horn v. Hill*, 180 Or App 139, 141, 41 P3d 1127 (2002). We begin by examining petitioner's argument under the Oregon Constitution. *See State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983) (setting forth that analytical approach).

"[T]he issue in a post-conviction case involving adequacy of trial counsel is whether the petitioner received 'an adequate performance by counsel of those functions of professional assistance which an accused person relies upon counsel to perform on his behalf.'" *Trujillo v. Maass*, 312 Or 431, 434, 822 P2d 703 (1991) (quoting *Krummacher v.*

*Gierloff,* 290 Or 867, 872, 627 P2d 458 (1981)). "To be entitled to post-conviction relief on the basis of inadequate assistance of counsel, a petitioner must show, 'by a preponderance of the evidence, facts demonstrating that trial counsel failed to exercise reasonable professional skill and judgment and that petitioner suffered prejudice as a result.'" *Stevens v. State of Oregon,* 322 Or 101, 108, 902 P2d 1137 (1995) (quoting *Trujillo,* 312 Or at 435). "The Oregon Constitution does not give a criminal defendant the right to a perfect defense, but 'it requires that the lawyer do those things reasonably necessary to diligently and conscientiously advance the defense.'" *Stevens,* 322 Or at 108 (quoting *Krummacher,* 290 Or at 874). With regard to prejudice, "only those acts or omissions by counsel which have a tendency to affect the result of the prosecution can be regarded as of constitutional magnitude." *Lichau v. Baldwin,* 333 Or 350, 359, 39 P3d 851 (2002) (internal quotation marks and emphasis omitted).

Petitioner's specific contention is that his trial counsel was constitutionally inadequate for failing to request a limiting jury instruction[2] that would have prohibited the jury from finding—from the nature and quantity of the charges involved—that petitioner had a propensity to sexually abuse young women and, in turn, finding that it was likely he had acted in conformity with that propensity and committed the alleged crimes.[3]

---

[2] Petitioner identifies the following instruction, given in *State v. Kitzman,* 129 Or App 520, 529, 879 P2d 1326 (1994), *rev'd in part,* 323 Or 589, 920 P2d 134 (1996), as of the sort that his counsel should have requested:

"Defendant has been charged with several unrelated counts in a single indictment. A separate crime is charged in each count of the Indictment. Each charge and the evidence pertaining to it must be considered separately by the jury.

"* * * * *

"In other words, it is your duty to consider the evidence solely for the charge it pertains to and no other charge."

(Brackets omitted; ellipsis in original.)

[3] Petitioner also asserts that his counsel was deficient for failing to move to sever the charges; failing to advise petitioner to plead guilty to certain of the counts; failing to adequately advise petitioner about whether to accept the state's plea offer; failing to object to certain testimony; failing to advise petitioner regarding his right to testify; and failing to object to statements made by the prosecutor during closing argument. In light of our disposition, we need not—and do not—address petitioner's argument concerning the failure to object during

OEC 404(3), the so-called propensity rule, provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

*See State v. Leistiko*, 352 Or 172, 180, 282 P3d 857, *adh'd to as modified on recons*, 352 Or 622, 292 P3d 522 (2012) ("Under OEC 404(3), evidence that defendant forcibly compelled the fourth woman to have sexual intercourse with him is not admissible to prove that he forcibly compelled any of the three victims to have sexual intercourse with him; that is, the rule prohibits the state from introducing the fourth woman's testimony to prove that defendant has a propensity to forcibly compel women to engage in sexual intercourse and that he acted in conformity with that propensity with the three victims."). OEC 105 provides, "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."

A. *Inadequate performance*

Turning first to the adequacy of trial counsel's performance, we conclude that, at the point that the trial court issued its final jury instructions, the risk that the jury would improperly rely on impermissible propensity inferences was so great and so apparent that defense counsel's failure to request a proper limiting instruction reflected an absence of professional skill and judgment. In so concluding, the following facts are of particular significance: the trial court had initially instructed the jurors that they could "draw any reasonable inference from the evidence"; the state had asked the jurors, in its closing argument, "What are the chances that you're going to have nine people coming before you, six disclosing nonconsensual sexual touching, with the varied

closing statement. With regard to the remaining arguments, we have considered them and reject them without discussion.

backgrounds, with the same theme of manipulation, deceit, and coercion? What are the chances?"; and the trial court told the jurors, immediately before they began deliberations on 18 counts of sexual misconduct relating to nine different underage women,[4] that, "you may draw inferences and reach conclusions from the evidence, if your inferences and conclusions are reasonable and are based on your common sense and experience."

Although the charges involved discrete incidents of conduct that, standing apart, did not involve particularly complex factual determinations, constitutionally adequate counsel would have recognized the great and obvious danger that the jury would rely on impermissible inferences about petitioner's evidently venal propensities in its deliberations. Moreover, there was no evident downside to requesting such an instruction; the upside, however, was plain: The jury would have been prohibited from concluding that petitioner had committed the charged acts based on a belief that he had a propensity to commit such acts. *See Pereida-Alba v. Coursey*, 252 Or App 66, 71, 284 P3d 1280 (2012), *rev allowed*, 353 Or 410 (2013) (where there was "no evident downside to petitioner from requesting an instruction on [a lesser-included offense] and a significant potential benefit to him from doing so[,]" the failure to consider requesting the instruction on the lesser-included offense falls below the reasonable professional skill and judgment required of defense counsel). We "make every effort to evaluate a lawyer's conduct from the lawyer's perspective at the time, without the distorting effects of hindsight," *Lichau*, 333 Or at 360, but the need for a limiting instruction would have been obvious. No novel or arcane propositions of law were involved. We conclude that petitioner has demonstrated, by a preponderance of the evidence, that asking for a proper limiting instruction was "reasonably necessary to diligently and conscientiously advance the defense[,]" *Krummacher*, 290 Or at 874, and that the failure to do so reflected a failure "to exercise reasonable professional skill and judgment." *Trujillo*, 312 Or at 435.

---

[4] The jury had also heard evidence that petitioner had engaged in uncharged sexual contact with at least two other underage women.

## B. *Prejudice*

We next must consider whether defendant was prejudiced as a result of that failure, *viz.*, whether petitioner has demonstrated that the lack of a limiting instruction had "a tendency to affect the result of the prosecution." *Krummacher*, 290 Or at 883. We first note several general propositions that are germane to our analysis before turning to a more specific application of the prejudice standard.

First, there can be no dispute that, in a joint trial with nine different victims alleging 10 discrete incidents of illegal sexual conduct, the trial court would have been required to give a limiting instruction upon petitioner's request. See discussion of OEC 404(3) and OEC 105 at 261 Or App 57.

Second, both this court and the Supreme Court have consistently emphasized the importance of proper limiting instructions in ensuring the fairness of joined proceedings. *Leistiko*, 352 Or at 178 ("When a trial court declines to sever joined offenses, and evidence relating to one offense is not admissible to prove another joined offense, a trial court ordinarily will instruct the jury to consider the evidence on each offense separately to prevent the jury from using the evidence offered to prove one offense to decide another joined offense."); *State v. Norkeveck*, 214 Or App 553, 560-61, 168 P3d 265 (2007), *rev den*, 344 Or 558 (2008) (when the defendant alleged substantial prejudice from trying multiple counts of sex abuse together because he intended to testify as to some of the counts but did not do so out of the risk of being impeached with a prior conviction, "[a]n instruction limiting the use of impeaching evidence would reduce any prejudice below the statutory standard of substantial prejudice"); *State v. Luers*, 211 Or App 34, 43-44, 153 P3d 688, *adh'd to as modified on recons*, 213 Or App 389, 160 P3d 1013 (2007) (in assessing whether a defendant was prejudiced by trying multiple charges together, one relevant consideration is "the probable effectiveness of limiting instructions given to the jury by the court"); *State v. McMinn*, 145 Or App 104, 107-08, 929 P2d 1009 (1996) (the trial court did not err in refusing to sever several counts of sex abuse, in part because "the jury was instructed to consider each count

separately"); *see also State v. Reyes*, 209 Or 595, 630-31, 308 P2d 182 (1957) ("The objection to proving other crimes is that it tends to show the defendant to the jury as a bad man generally and to prejudice their minds against the accused and to predispose them to a belief in his guilt. When evidence of such crimes is properly admitted for a particular purpose * * * an instruction limiting its consideration to that purpose should be given when requested in order to minimize so far as possible the use of the evidence by a jury for an inadmissible purpose." (Internal citation omitted.)).

Third, defendant does not contend that petitioner cannot show prejudice on the ground that the evidence of unlawful sexual contact pertaining to any particular victim was nonetheless admissible as to a different victim for a noncharacter purpose "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." OEC 404(3).

Bearing those three propositions in mind, we turn now to a somewhat more detailed prejudice analysis than petitioner requests us to undertake. Despite petitioner's broad claim that he was, as a general matter, prejudiced by his trial counsel's inadequate performance, we conclude that we must determine whether petitioner was prejudiced on each individual count of conviction. We do so because of the following statement made by petitioner's trial counsel in closing argument: "We admit several of them are true. He did violate the law. He had sexual relations with a number of these girls. Consensual sexual relations. But because they were a lot younger than him, it's against the law. And he's guilty of a lot of things. It's just plain what the truth is."

We begin with the charges involving MZ, KN, and CO. As noted, petitioner conceded, before the jury, that he had engaged in sexual conduct with each of those victims. The nature of the charges pertaining to those victims— third-degree rape, ORS 163.355 (Counts 9 and 18); third-degree sodomy, ORS 163.385 (Count 19); and misdemeanor contributing to the sexual delinquency of a minor, ORS 163.435 (Count 20)—and the manner in which they were charged required the state to prove only that sexual contact of a certain nature occurred and that the victim was under

a certain age. It is untenable to suggest that petitioner was prejudiced by the failure to request a limiting instruction on those counts of conviction for which he conceded his guilt. *Accord State v. Lopez-Minjarez*, 350 Or 576, 587, 260 P3d 439 (2011) (on direct appeal, where the defendant "conceded his direct participation in" a crime, an erroneous jury instruction was "patently harmless"). Petitioner was not prejudiced by the lack of a limiting instruction with respect to his convictions on Counts 9, 18, 19, and 20.

However, because, as we explain below, we conclude that petitioner was prejudiced by his counsel's inadequate performance with respect to the other convictions that, in turn, formed the bases for the elevated criminal history score that he received for sentencing purposes on Counts 9, 18, and 19, we conclude that petitioner was prejudiced with respect to the resultant sentences on those counts. Thus, although we conclude that petitioner is not entitled to a new trial on Counts 9, 18, and 19, we conclude that petitioner is entitled to be resentenced for his convictions on those counts. *See* ORS 138.520 ("The relief which a court may grant or order under ORS 138.510 to 138.680 shall include release, new trial, modification of sentence, and such other relief as may be proper and just.").

Count 20 differed from Counts 9, 18, and 19 because it was a misdemeanor conviction, and the felony sentencing guidelines were thus inapplicable. Petitioner received a one-year sentence on that conviction. There is no indication, in the record before us, that the trial court relied on petitioner's other convictions in imposing that sentence. Petitioner has therefore not met his burden of demonstrating that he was prejudiced with respect to his conviction or his sentence on Count 20. *See Trujillo*, 312 Or at 435 ("The burden is on petitioner to show * * * facts demonstrating that * * * petitioner suffered prejudice * * *.").

Before examining whether petitioner was prejudiced with respect to his remaining convictions, it will aid our discussion to list the elements of the underlying crimes still at issue, *viz.*, first-degree rape, second-degree sexual abuse, and third-degree sexual abuse. ORS 163.375 provides, as relevant, "A person who has sexual intercourse

with another person commits the crime of rape in the first degree if * * * [t]he victim is subjected to forcible compulsion by the person[.]" ORS 163.425 provides, as relevant, "A person commits the crime of sexual abuse in the second degree when * * * [the] person subjects another person to sexual intercourse, deviate sexual intercourse or, except as provided in ORS 163.412, penetration of the vagina, anus or penis with any object other than the penis or mouth of the actor and the victim does not consent thereto[.]" "[T]he phrase 'does not consent' in ORS 163.425 refers to the victim's lack of capacity to consent due to age, as well as to the lack of actual consent." *State v. Ofodrinwa*, 353 Or 507, 532, 300 P3d 154 (2013). ORS 163.415 provides, as relevant, "A person commits the crime of sexual abuse in the third degree if * * * [t]he person subjects another person to sexual contact and * * * [t]he victim does not consent to the sexual contact; or * * * [t]he victim is incapable of consent by reason of being under 18 years of age[.]"

With respect to each of the sexual abuse counts except those pertaining to BB, it is important to note—for reasons that we explain below—that, although the state may prove the lack-of-consent element either by showing that the victim did not, in fact, consent, or that the victim was legally incapable of providing consent due to his or her age, *Ofodrinwa*, 353 Or at 532; ORS 163.415(1)(a)(A)-(B), petitioner was convicted based on the former theory. The trial court's final instructions to the jury, in language that was, in substance, repeated individually for each of the sexual abuse counts, stated, "In this case, to establish the crime of Sexual Abuse in the Second Degree the State must prove beyond a reasonable doubt the following four elements: * * * and four, [the victim] did not consent to such [sexual acts]." The jury was never informed that it could convict petitioner of second- or third-degree sexual abuse based on proof of the victims' ages, except for those charges pertaining to BB.

We further note that there are two distinct types of impermissible propensity inferences that the jury was invited to rely upon in the absence of a limiting instruction. The first is that, because petitioner had apparently engaged in sexual contact with several other minor victims, it was more likely that he had engaged in sexual contact with the

particular victim under consideration. The second pertains to the first-degree rape charges; the jury was invited to infer that, because petitioner had forcibly compelled other young women to have sex, he had also employed forcible compulsion on the particular occasion in question.

With respect to RM, petitioner was charged with one count of first-degree rape (Count 1 in case number 08-00213) and one count of second-degree sexual abuse (Count 2 in case number 08-00213). Petitioner denied having any sexual contact with RM. Thus, the relevant questions as to those counts were whether petitioner had sexual contact with the victim and, if so, whether petitioner had forcibly compelled the victim to engage in sexual intercourse.

In the absence of a proper limiting instruction, and in light of the instructions that were given and the prosecutor's closing argument, the jury may well have decided to infer—from the evidence that petitioner had engaged in sexual contact with several other underage women—that petitioner had engaged in sexual contact with RM, which was a necessary finding to sustain both the rape and the sexual abuse convictions. With respect to the first-degree rape charge, the jury was also invited to draw the second type of improper propensity inference, *viz.*, petitioner's apparent propensity for forcibly compelling underage women to have sexual intercourse made it more likely that he had forcibly compelled RM to do so as well.

As petitioner points out, the evidence against him on those counts was far from overwhelming. Indeed, the state told the jury, in closing argument, that the case against petitioner with respect to RM hinged on a credibility determination, *i.e.*, whether the incident of sexual contact had occurred as RM alleged. *See Horn*, 180 Or App at 151, (on post-conviction review of a sexual abuse case, the petitioner established that he was prejudiced in the outcome of his jury trial by his counsel's failure to introduce an accuser's recantation, in part because the "petitioner's defense crucially depended on his casting doubt on the credibility of [his accusers]"). There was no physical evidence implicating petitioner on the counts relating to RM. Given the highly inflammatory nature of the charges and the critical role that

credibility necessarily played in the jury's consideration of those charges, we conclude that petitioner was prejudiced by his counsel's inadequate performance with respect to his convictions on Counts 1 and 2 in case number 08-00213.

For the same reasons, we conclude that petitioner was prejudiced with respect to his convictions on the counts pertaining to JA, which were for one count of first-degree rape (Count 14) and one count of second-degree sexual abuse (Count 15). Petitioner denied having had any sexual contact with JA. The jury was encouraged—by the prosecutor—and permitted—by defense counsel's failure to obtain a limiting instruction—to rely on the two types of impermissible propensity inferences discussed above in its consideration of those charges. The dispositive questions involved credibility determinations; there was no physical evidence tending to prove that the charged offenses had occurred. Thus, we conclude that petitioner was prejudiced with respect to his convictions on Counts 14 and 15.

Petitioner was charged with two counts of third-degree sexual abuse arising out of a single incident of alleged sexual contact with BB (Counts 16 and 17). As with JA and RM, petitioner denied having had any sexual contact with BB,[5] there was no physical evidence, and the jury's determination largely hinged on credibility. In the face of petitioner's denials that such contact had occurred, the jury was invited to rely on the first type of impermissible propensity inference at issue, *viz.*, to consider that, because petitioner stood accused of engaging in sexual contact with multiple other young women, it was more likely that petitioner had engaged in sexual contact with BB. Accordingly, petitioner was prejudiced by his trial counsel's failure to request a limiting instruction on Counts 16 and 17.

---

[5] In addressing the jury, defense counsel never explicitly stated what petitioner's position was with respect to BB; that is, it is ostensibly unclear whether defense counsel intended to include BB in the concession that petitioner "had [unlawful] sexual relations with a number of these girls." Defense counsel did, however, present the testimony of a woman who testified that BB had admitted to fabricating the allegations against petitioner. The obvious import of that testimony was that petitioner denied, at trial, that he had engaged in sexual contact with BB.

With respect to DH, petitioner was charged with second-degree sexual abuse (Count 7) and third-degree sexual abuse (Count 8). Petitioner did not present a defense as to those charges. Defense counsel did not cross-examine DH, nor make any specific mention of DH in either opening or closing argument. Instead, as noted, petitioner's trial counsel argued generally that petitioner had engaged in "[c]onsensual sexual relations" with a "number of these girls," but had not forcibly raped any of them.[6] It is thus unclear from the record whether that admission was intended to encompass DH. Even if it was so intended, however, that statement did not amount to an admission that petitioner had committed the crimes charged in Counts 7 and 8 because, as we have explained, the jury convicted the petitioner because it found—as it was required to by the jury instructions—that DH did not, in fact, consent to the alleged conduct. 261 Or App at 62-63. There is thus no possibility that petitioner was convicted based on counsel's admission that petitioner he had engaged in *consensual* sexual conduct with "a number of these girls," for, even if that admission was intended to encompass DH, it did not amount to a statement that petitioner had committed the crimes charged in Counts 7 or 8.

For those reasons, we conclude that petitioner was prejudiced with respect to his convictions on Counts 7 and 8. Assuming that petitioner was conceding sexual contact with DH, the only pertinent determination for the jury was whether DH had, in fact, consented to that contact. There was no physical evidence. The determination was almost entirely a matter of assessing DH's credibility as a witness; however, the jury was improperly permitted to draw and rely on the inference that, because petitioner had sexual contact with nonconsenting, underage women, he had therefore done so with DH as well.

With regard to SB, petitioner was tried and convicted on two counts of first-degree rape (Counts 1 and 3) and two counts of second-degree sexual abuse (Counts 2 and 4). The charges arose out of two separate incidents. At trial, petitioner put on evidence that the second incident was a

---

[6] In the post-conviction hearing, petitioner stated that he had told his counsel, before trial, that he had engaged in sexual contact with DH.

consensual encounter and, in closing argument, petitioner's counsel summarized the defense with respect to SB, "It wasn't right, but it also wasn't Rape in the First Degree the first time or the second time."

We conclude that petitioner was prejudiced with respect to his convictions on the first-degree rape charges in Counts 1 and 3, which required the jury to find that petitioner had forcibly compelled SB to have sexual intercourse. Although permitting the jury to rely on the first type of improper propensity inference did not prejudice petitioner— because he admitted that he had engaged in sexual contact with SB—he was prejudiced by the fact that the jury was permitted to infer that he had forcibly compelled SB to have sex because he had a propensity to engage in that conduct.

We also conclude that petitioner was prejudiced with respect to his convictions for second-degree sexual abuse of SB. As noted, the jury convicted petitioner on the basis that SB did not, in fact, consent to the sexual contact. As explained, the jury was not told that it was impermissible to infer from petitioner's apparent propensity for sexually assaulting young women without their consent to find that he had done so with SB. Thus, petitioner was prejudiced with respect to his convictions on Counts 2 and 4.

Finally, a similar analysis applies with respect to the charges that petitioner committed first-degree rape (Count 10) and second-degree sexual abuse (Count 11) against KH. With respect to petitioner's defense to those counts, counsel summarized, "[I]t's not Rape in the First Degree, either. It's a crime. We acknowledge that. But it's not Rape in the First Degree." In other words, petitioner conceded that sexual contact had occurred and that it was criminal,[7] but denied that he had forcibly compelled KH to engage in sexual contact. There was no physical evidence; KH's credibility was the central issue.

---

[7] It is not clear that his counsel's acknowledgement that petitioner had committed a crime by having sexual contact with KH constituted an admission that he was guilty of the *charged* crime, *viz.*, second-degree sexual abuse. Certainly, if the state had chosen to pursue the theory that petitioner was guilty of sexual abuse because of the victim's age, then that statement would have constituted such an admission.

For the reasons we have laid out above, petitioner was prejudiced by his trial counsel's failure to obtain an instruction that would have prohibited the jury from inferring that petitioner's apparent propensity for forcibly compelling young women to have sex made it more probable that he had done so with respect to KH. Petitioner was prejudiced with respect to his conviction on Count 10.

Because the state chose to charge petitioner with second-degree sexual abuse on the theory that KH did not, in fact, consent to that contact, petitioner was also prejudiced with respect to Count 11. As we have explained, the jury was permitted and encouraged to infer that the fact of the other alleged instances for which petitioner stood accused of abusing young women without their consent indicated that petitioner had engaged in the requisite sexual conduct without KH's consent.

Defendant argues that petitioner cannot show any prejudice because the court instructed the jury separately as to each count and provided the jury with verdict forms that clearly delineated the different victims and charges. Defendant also contends that the fact that the jury returned nonunanimous verdicts on some of the counts demonstrates that it considered each count separately, notwithstanding the lack of a limiting instruction.

Defendant's arguments miss the mark. It is true that the jury was instructed separately on the elements for each individual charge and that the jury was given distinct verdict forms for each victim; we accordingly have little doubt that the jury considered each discretely charged incident separately.[8] That fact, however, goes nowhere toward showing that the jury did not improperly rely on inferences about petitioner's apparent propensity to engage in illicit sexual contact with young women and—in some instances—to forcibly compel young women to submit to that contact. The jurors were told, before each separate charge was explained to them, that they could "draw inferences and reach conclusions from the evidence, if your inferences and conclusions

---

[8] We also note that the prosecutor did, at various points during his closing argument, specifically parse out each individual victim's account and advocate why that specific account was credible, notwithstanding the others.

are reasonable and are based on your common sense and experience." "[J]urors are assumed to have followed their instructions, absent an overwhelming probability that they would be unable to do so." *State v. Smith*, 310 Or 1, 26, 791 P2d 836 (1990). *See State v. Harding*, 221 Or App 294, 307, 189 P3d 1259, *rev den*, 345 Or 503 (2008) (concluding that there was no substantial prejudice in trying separate counts together, in part, because, "the trial court took great care *to link each piece of evidence* with the specific charge to which it applied, instructing the jury regarding each element of each alleged crime separately, and it specified the address to which each count corresponded on the jury verdict forms" (emphasis added)). Moreover, the state told the jury of petitioner's "predatory nature," referenced petitioner's "patterns" of sexual assault, and appealed to the jury to ask what the chances were that nine different victims would make similar allegations. Again, the prejudice that petitioner suffered was not that the jury improperly failed to consider each of the distinct charges separately, but rather that the jury was affirmatively encouraged—by the prosecutor's closing argument—and permitted—by the lack of a limiting jury instruction—to improperly draw and rely on propensity inferences in making its distinct determinations on each of those charges.

## III.  CONCLUSION

We conclude that under Article I, section 11, of the Oregon Constitution, petitioner was prejudiced by his trial counsel's deficient performance with respect to his convictions on each of the first-degree rape counts (Counts 1, 3, 10, 14, and Count 1 in case number 08-00213), on those second- and third-degree sexual abuse counts where he denied engaging in the sexual contact that formed the basis of the charge (Counts 15, 16, 17, and Count 2 in case number 08-00213), and on those second- and third-degree sexual abuse counts where petitioner conceded consensual sexual contact with the victim (Counts 2, 4, 7, 8, and 11). Petitioner was not prejudiced with respect to his convictions, but was prejudiced with respect to the resulting sentences, on Counts 9, 18, and 19, and is therefore entitled to be resentenced on those counts. Petitioner has not demonstrated that he was

prejudiced with respect to either his conviction or his sentence on Count 20.[9]

Reversed and remanded for entry of judgment consistent with this opinion.

---

[9] With respect to petitioner's convictions on those counts for which we conclude that petitioner was prejudiced by the denial of effective assistance of counsel under Article I, section 11, of the Oregon Constitution, we do not address his arguments under the Sixth Amendment to the United States Constitution. *Freedom Socialist Party v. Bradbury*, 182 Or App 217, 231, 48 P3d 199 (2002) (Landau, J., concurring) ("[W]e cannot reach federal constitutional issues until we have determined that the state constitution is not dispositive.").

With respect to those counts where the Oregon Constitution is not dispositive, "to establish inadequate assistance of counsel under the Sixth Amendment to the United States Constitution, petitioner must prove that counsel's assistance was unreasonable and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Smith v. State of Oregon*, 201 Or App 520, 524, 119 P3d 801 (2005) (quoting *Strickland v. Washington*, 466 US 668, 684, 694, 104 S Ct 2052, 80 L Ed 2d 674 (1984)). Even assuming that trial counsel's performance was unreasonable under the federal assistance of counsel standard, we conclude, for the reasons that we have identified in respect to the prejudice prong of the Oregon constitutional analysis, that there is no reasonable probability that "the result of the proceeding would have been different" with respect to petitioner's convictions on Counts 9, 18, 19, and 20. *See Montez v. Czerniak*, 237 Or App 276, 278 n 1, 239 P3d 1023 (2010), *rev allowed*, 351 Or 321 (2011) ("The standards for determining the adequacy of counsel under the state constitution are functionally equivalent to those for determining the effectiveness of counsel under the federal constitution."). The same conclusion applies with respect to petitioner's sentence on Count 20.