Argued and submitted January 21, convictions on counts IX through XIV reversed and remanded for new trial; convictions on counts I through VIII affirmed and remanded for resentencing August 10, Kitzman's petition for review and State's petition for review allowed December 20, 1994 (320 Or 492)

# STATE OF OREGON,
*Respondent,*

*v.*

# MARK MICHAEL KITZMAN,
*Appellant.*

(922182; CA A77967)

879 P2d 1326

Alan M. Dershowitz and Victoria B. Eiger argued the cause for appellant. With them on the briefs were Lawrence Matasar, Hoffman & Matasar, Nathan Z. Dershowitz and Dershowitz & Eiger, P.C.

Ann F. Kelley argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

De MUNIZ, J.

## De MUNIZ, J.

Defendant appeals his convictions of 14 counts of rape, sexual abuse and unlawful sexual penetration. ORS 163.375; ORS 163.427; ORS 163.411. The offenses involved three victims: M, who is defendant's son, and L and L2, daughters of defendant's former lover, Yvette Gordon. At the time of trial, L was eight years old, L2 was three and one-half, and M was almost seven. We affirm the convictions for rape and sexual abuse of L and otherwise reverse and remand.

In May, 1991, defendant, who is a physician, met Yvette when she consulted him professionally shortly after she had separated from her husband. The relationship evolved from a professional to a personal one, and by August, the two were spending almost every night together, either at defendant's or Yvette's home. The children were present in the houses.

By January, 1992, defendant's relationship with Yvette had ended. Yvette had temporarily reconciled with her husband, and the family was in California when L told her mother that defendant had committed sexual offenses against her. When the family returned to Oregon, Yvette contacted the police and asked that they pursue L's allegations. Shortly thereafter, L2 and M made statements about sexual conduct that implicated defendant. In May, 1992, a 14-count indictment was returned against defendant.

L testified at trial. M and L2 did not. Their allegations against defendant were admitted under the hearsay exception in OEC 803(18a)(b), which provides, in part:

> "A statement made by a child victim, which statement concerns an act of sexual conduct performed with or on the child by another, is not excluded by ORS 40.455 if the child either testifies at the proceeding and is subject to cross-examination or is under 12 years of age and is unavailable as a witness. However, when a child under 12 years of age is unavailable as a witness, the statement may be admitted in evidence only if the proponent establishes that the time, content and circumstances of the statement provide indicia of reliability, and in a criminal trial that there is corroborative evidence of the act of sexual conduct and of the alleged perpetrator's opportunity to participate in the conduct and

that the statement possesses indicia of reliability as is constitutionally required to be admitted. No statement may be admitted under this paragraph unless the proponent of the statement makes known to the adverse party the proponent's intention to offer the statement and the particulars of the statement no later than 15 days before trial, except for good cause shown. For purposes of this paragraph, in addition to those situations described in ORS 40.465(1), the child shall be considered 'unavailable' if the child has a substantial lack of memory of the subject matter of the statement, is presently incompetent to testify, is unable to communicate about the sexual conduct because of fear or other similar reason or is substantially likely, as established by expert testimony, to suffer lasting severe emotional trauma from testifying. Unless otherwise agreed by the parties, the court shall examine the child in chambers and on the record or outside the presence of the jury and on the record. The examination shall be conducted immediately prior to the commencement of the trial in the presence of the attorney and the legal guardian or other suitable adult as designated by the court. If the child is found to be unavailable, the court shall then determine the admissibility of the evidence. The determinations shall be appealable under ORS 138.060(3). The purpose of the examination shall be to aid the court in making its findings regarding the child's availability as a witness and the reliability of the child's statement. In determining whether a statement possesses indicia of reliability under this paragraph, the court may consider, but is not limited to, the [enumerated] factors[.]"

The trial court held that the statute did not require defendant's presence at the hearing, that there was no constitutional violation in excluding him from the hearing and that it would examine M and L2. Defendant was excluded from the rooms where the court conducted a brief examination of the children. His counsel was present, but defendant was not in communication with his counsel, and counsel was not allowed to examine the children. Defendant was present when other witnesses testified as to the children's statements and the circumstances of those statements. The court ruled that M was unavailable because of fear or similar reason and because he would likely suffer lasting trauma if he had to testify and that L2 was unavailable due to age and inability to communicate. The court found that the children's statements were reliable and corroborated.

Defendant's first assignment of error addresses the proceeding held pursuant to OEC 803(18a)(b).[1] He argues that, if the statute is interpreted to allow exclusion of the defendant and no cross-examination of the accusers, then the statute is unconstitutional under Article I, section 11, of the Oregon Constitution and the federal Confrontation Clause.[2] The state counters that the statute clearly permits the procedure followed by the court here, and that defendant's constitutional arguments are "unconvincing."

■ In determining whether confrontation rights have been violated under the Oregon Constitution, the Oregon Supreme Court has adopted the reasoning of the United States Supreme Court as to questions of reliability and unavailability. *State v. Campbell*, 299 Or 633, 705 P2d 694 (1985). The proper inquiry in determining whether the Confrontation Clause has been violated

> "is whether there has been any interference with the defendant's opportunity for effective cross-examination." *Kentucky v. Stincer*, 482 US 730, 744 n 17, 107 S Ct 2658, 96 L Ed 2d 631 (1987).

As the trial court interpreted OEC 801(18a)(6) here, not only was there no opportunity for effective cross-examination, there was no opportunity for any cross-examination. However, that interpretation is not mandated by the statute, as neither the text nor context of OEC 803-(18a)(b) addresses the presence of the defendant at the hearing or requires that *only* the court shall examine the child. Neither is it mandated by the legislative history on which the state relies.[3] We will not construe a statute to be in violation of constitutional prohibitions unless no other

---

[1] In *State v. Renley*, 111 Or App 453, 827 P2d 1345 (1992), we considered the reliability of the hearsay admissible under OEC 803(18a)(b) and held that the statute provided protection of a defendant's confrontation rights with greater clarity, detail and precision than the Supreme Court appeared to require in *Ohio v. Roberts*, 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980), and *Idaho v. Wright*, 497 US 805, 110 S Ct 3139, 111 L Ed 2d 638 (1990). 111 Or App at 461. We did not address issues related to unavailability or procedures used under the statute.

[2] Defendant also contends that his right to be present is a right that "the Oregon Constitution itself undoubtedly safeguards. Or Const Art. I § 11."

[3] That history is from 1991, two years after the statute was enacted, and is not persuasive as to legislative intent in 1989. *See DeFazio v. WPPSS*, 296 Or 550, 561, 679 P2d 1316 (1984).

construction is possible. *State v. Smyth*, 286 Or 293, 296, 593 P2d 1166 (1979).

*Maryland v. Craig*, 497 US 836, 110 S Ct 3157, 111 L Ed 2d 666 (1990), is instructive as to the parameters of a defendant's right to be present when a child accuser testifies. The Supreme Court considered a procedure under which the child was allowed to testify in a room separate from the courtroom while a video monitor recorded and displayed the testimony to those in the courtroom. Under the Maryland procedure, the prosecutor and defense counsel are in a separate room with the child witness, while the jury and the defendant remain in the courtroom. The defendant remains in electronic communication with defense counsel throughout the examination. The Court approved the procedure, in part, because the trial court could have found, on the basis of expert testimony, that testimony by the child in front of the defendant could have resulted in serious emotional distress to the child:

> "So long as a trial court makes such a case-specific finding of necessity, the Confrontation Clause does not prohibit a State from using a one-way closed circuit television procedure for the receipt of testimony by a child witness in a child abuse case." 497 US at 860.

The state contends that the trial court decided that M was unavailable here, in part on the basis of expert testimony that established that he would suffer lasting severe emotional trauma if he had to testify.[4] Thus, the state argues, if any error occurred because defendant was not present when M was examined, that error was not prejudicial. However, the state's position ignores that the Supreme Court approved the procedure in Maryland because other elements protected the defendant's right of confrontation. Although the defendant was not face to face with the witness, he remained in electronic communication with his counsel and objections could be made and ruled on as if the witness were testifying in the courtroom. Thus, the central concern of the Confrontation Clause—to ensure the reliability of the evidence by subjecting it to rigorous adversarial testing—was met.

---

[4] Even assuming that the expert's testimony provided the case-specific showing of necessity for M, the state does not contend that such a showing was made for L2.

The state argues, however, that none of the testimony elicited from the children shows any relevance to the issue of the reliability of their statements. It argues that the court's findings of reliability were grounded on testimony by other witnesses and that defense counsel had the opportunity to cross-examine those witnesses.

However, OEC 803(18a)(b) provides for a hearing at which determinations of both competency and reliability are to be made.[5] Defendant's counsel had no opportunity to cross-examine M and L2 on either issue. In *Kentucky v. Stincer, supra,* the Supreme Court made clear the crucial role of that opportunity. The defendant, charged with sexual offenses against two girls, was excluded from the competency hearing of the two victims, who later testified at trial. The Supreme Court, noting that the questions asked at the competency proceeding were easy to repeat on cross-examination of the witnesses at trial, 482 US at 741, concluded:

"[T]he critical tool of cross-examination was available to counsel [at trial] as a means of establishing that the witnesses were not competent to testify, as well as a means of undermining the credibility of their testimony.

"Because [the defendant] had the opportunity for full and effective cross-examination of the two witnesses during trial, and because of the nature of the competency hearing at issue in this case, we conclude that respondent's rights under the Confrontation Clause were not violated by his exclusion from the competency hearing of the two girls." 482 US at 744.

Here, the procedure denied defense counsel of *all* opportunity for effective cross-examination at *any* time.

Under the trial court's interpretation of OEC 803-(18a)(b), defendant had no opportunity to confront his accusers. We cannot say that, had that opportunity been available, counsel would not have been able to ask questions that could have established that M and L2 were, in fact, competent to testify or that they were not credible. That was

---

[5] Whether or not federal appellate decisions appear to require examination of the child, *see State v. Renley, supra,* 111 Or App at 462, OEC 803(18a)(b) does. Some of the factors to be considered are particularly within the knowledge of the child. *See, e.g.,* OEC 803(18a)(b)(A), (D).

error that violated defendant's constitutional right of confrontation and requires reversal of the convictions involving M and L2.[6]

■ However, we do not agree with defendant that the convictions relating to L are inextricably intertwined with M's and L2's statements, which were admitted as a result of the hearing under OEC 803(18a)(b). The testimony of L and adult witnesses supported the verdict on the charges involving L, and the jury had no reason to consider the statements of M and L2, which did not relate to defendant's contacts with L. Also, at defendant's request, the trial court gave the jury instructions directing it to consider the evidence for each charge separately. We presume that the jury followed those instructions. *State v. Isom*, 313 Or 391, 403, 837 P2d 491 (1992).

■ Defendant next assigns error to the admission of out-of-court statements made by L that were consistent with her trial testimony. He argues that those statements about contacts with L2 and M were inadmissible under OEC 803-(18a)(b), because the statements did not concern sexual contact with L. He also argues that L's hearsay statements about defendant's sexual contacts with her were irrelevant under OEC 401 and that any probative value of the statements was outweighed by their prejudicial effect. He contends that the statements improperly permitted the state to bolster the credibility of L, its key witness.

Before the pretrial hearing, defendant moved to exclude any evidence of prior consistent statements of L2, M and L from the state's case-in-chief. Arguments that are discussed at a pretrial hearing and ruled on by the court are sufficiently preserved for appeal. *State v. Engweiler*, 118 Or App 132, 135, 846 P2d 1163, *rev den* 317 Or 486 (1993). However, defendant did not pursue his motion on the admissibility of L's prior statements. During the pretrial hearing, he did not argue the issue or seek a ruling, but abandoned the issue.[7] The court did not make a ruling, and defendant made

---

[6] Because of our holding, we do not reach defendant's argument that the trial court erred in finding that the statements of M and L2 were reliable and corroborated.

[7] Defendant's attorney stated, "I think at this point it would be better to deal with the 803 motion than my — because its really basically the same motion just

no objection to the testimony at trial. The alleged error defendant now raises was not preserved. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 823 P2d 956 (1991).

■    In his next assignment, defendant argues that the trial court erred in refusing to compel the state to elect the evidence or incident that underlay each count of the indictment.[8] Defendant's position, essentially, is that the court's refusal to compel the state to elect which incident it was relying on for each of the charges created the possibility that a conviction would be returned without the requisite 10 jurors finding evidence that a particular act or incident had occurred. In other words, some jurors might conclude from certain facts that defendant had committed crime A, but other jurors might conclude from altogether different facts that defendant had committed crime A.[9]

We recently rejected a similar argument in *State v. Randolph, supra* n 8, in part because the court instructed the jury that it had to agree that the same act had been proved and that the act occurred on a separate occasion. 123 Or App at 571. Here, the court gave defendant's requested instruction:

---

coming from different directions." The prosecutor responded, "The 803(18a)(b) motion, I believe, precludes this motion on prior consistent statements."

[8] We note that, as in *State v. Randolph*, 123 Or App 566, 860 P2d 873, *rev den* 318 Or 382 (1993), location identified many of the offenses. L testified that one incident was in her room at her house, "around summer" before school started. Another was at defendant's house while she was playing Nintendo. A third incident occurred in the afternoon when she was outside playing with a billy goat and a fourth at her house near Christmas when she was in the toy room. She also testified, on cross-examination, that defendant raped her, and her mother came home with groceries.

Defendant contends that the last testimony actually referred to the first incident and argues that the state should have been compelled to elect, because L testified only as to four acts, even though the indictment charged five acts of rape involving L. That argument goes to the sufficiency of the evidence that was put before the court by defendant in his motions for judgments of acquittal. One of the motions was based on the theory that the state had presented evidence of only four rapes. The trial court denied the motion, finding evidence of "five distinct, separate acts." However, defendant has not assigned that ruling as error.

[9] Defendant also argues that the court unconstitutionally amended the indictment by giving jury instructions that allowed the jury to convict based on an incident not charged by the grand jury. Defendant did not object to the jury instructions on that ground, and the alleged error is not preserved.

"[Defendant] has been charged with several unrelated counts in a single indictment. A separate crime is charged in each count of the Indictment. Each charge and the evidence pertaining to it must be considered separately by the jury.

"\* \* \* \* \*

"In other words, it is your duty to consider the evidence solely for the charge it pertains to and no other charge."

The instruction sufficiently ensured that the jury could convict only upon a determination that the same act had occurred on one occasion. *State v. Randolph, supra* n 8, 123 Or App at 571. The trial court did not err in denying defendant's motion to compel election.

■■ In his sixth assignment of error, defendant argues that the trial court erred by refusing to sever the charges involving M from those involving L2 and L, pursuant to ORS 132.560(3).[10] We review the denial of a motion to sever for abuse of discretion. *State v. Parker*, 119 Or App 105, 849 P2d 1157, *rev den* 317 Or 584 (1993). ORS 132.560(1) permitted the single indictment to contain all the counts, because the "offenses were of the same or similar character." That language was adopted in 1989 and was based on the Federal Rules of Criminal Procedure. *State v. Meyer*, 109 Or App 598, 602, 820 P2d 861 (1991), *rev den* 312 Or 677 (1992). In *Meyer*, we adopted the reasoning from *United States v. Werner*, 620

[10] ORS 132.560 provides, in part:

"(1) A charging instrument must charge but one offense, and in one form only, except that:

"(a) Where the offense may be committed by the use of different means, the charging instrument may allege the means in the alternative.

"(b) Two or more offenses may be charged in the same charging instrument in a separate count for each offense if the offenses charged are alleged to have been committed by the same person or persons and are:

"(A) Of the same or similar character;

"(B) Based on the same act or transaction; or

"(C) Based on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

"(2) If two or more charging instruments are found in circumstances described in subsection (1)(b) of this section, the court may order them to be consolidated.

"(3) If it appears, upon motion, that the state or defendant is prejudiced by a joinder of offenses under subsection (1) or (2) of this section, the court may order an election or separate trials of counts or provide whatever other relief justice requires."

F2d 922 (2d Cir 1980), to determine the proper test for review of a trial court's denial of a motion to sever. A trial court has the discretion to deny severance if the evidence is sufficiently simple and distinct to mitigate the dangers created by joinder and if evidence of the joined offenses would be mutually admissible in separate trials. 109 Or App at 604.

Defendant argues that the evidence regarding the offenses would not have been "mutually admissible," and it was not "simple and distinct." He also contends that the trial court's refusal to sever the charges substantially prejudiced him, because it created unacceptable risks that the jury would conclude guilt by inferring that defendant had a criminal disposition and because of cumulative evidence.

The state argues that the various charges were simple and distinct and that the evidence of those crimes was also simple and distinct. It contends that, although the evidence would not have been completely mutually admissible, L's evidence concerning M would still have been needed, because she saw defendant abusing him. Furthermore, because her credibility could be attacked because her report of the crimes was tardy, the state would be able to show in its case-in-chief why she had not reported the original assault. *See State v. Zybach*, 308 Or 96, 775 P2d 318 (1989). Thus, the state contends, even if the motion to sever had been granted, the jury would still have heard about defendant's rapes of L and his subsequent threats to her.

We agree with the state that the evidence was not so confusing that the jury was unlikely to have been able to sort through it in order to consider the offenses separately. Furthermore, the legislature enacted the statute permitting joinder, even though a risk of prejudice resulting from cumulative evidence is inherent when charges are joined. Here, the court alleviated that prejudicial effect by giving defendant's instruction that he was charged with unrelated incidents and that each charge, and the evidence pertaining to it, must be considered separately. We find no abuse of discretion in the court's denial of defendant's motion to sever.

■　Defendant's next assignment of error is that the trial court erred by denying his motion to dismiss the indictment. He asserts that the state violated the requirement in ORS

418.747(3) that child sexual abuse investigations and interviews be conducted by trained personnel.[11] He argues that, because the children's statements are central to the case, the state's violation requires dismissal of the indictment or, in the alternative, a new trial.

ORS 418.747 reflects a legislative policy of protecting child victims of sexual abuse. ORS 418.747(5) states that "[p]rotection of the child is of primary importance." The statute directs the district attorney in each county to develop multidisciplinary teams of individuals trained in child abuse investigation. ORS 418.747(1). Those teams are to develop "procedures to be followed to assess risks to the child and criteria and procedures to be followed when removal of the child is necessary for the child's safety." ORS 418.747(2).

Thus, the requirements in ORS 418.747(3) and (4) are designed to protect child victims of sexual abuse. Nothing in ORS 418.747 purports to provide rights to defendants in child sexual abuse cases or addresses the admissibility of evidence from investigations of child abuse. Furthermore, even if the statute were designed to protect defendants, it provides no sanction for failure to comply with its requirements. Although interviews and investigations in a child abuse case that do not conform to the requirements of the statute could be used to discredit evidence obtained from the interviews, violations are not a ground for dismissing an indictment, suppressing evidence or granting a new trial. We conclude that the trial court did not err in refusing to dismiss the indictment.

Defendant's final assignment of error is that the trial court erred in imposing durational departure sentences on his convictions on counts I and II involving L. Because we reverse and remand the case in part, the entire case must be remanded for resentencing, *State v. Dvorak*, 124 Or App 578, 863 P2d 1314 (1993), *rev den* 318 Or 351 (1994), and we do not reach defendant's arguments.

---

[11] ORS 418.747 provides for the creation of interagency teams to investigate child abuse. In addition, ORS 418.747(3) provides:

"Each team member and those conducting child abuse investigations and interviews of child abuse victims shall be trained in risk assessment, dynamics of child abuse, child sexual abuse and rape of children, legally sound and age appropriate interview and investigatory techniques."

Convictions on counts IX through XIV reversed and remanded for a new trial; convictions on counts I through VIII affirmed and remanded for resentencing.