Argued and submitted November 15, 2018, reversed and remanded
November 14, 2019

## JULIE ANN MITCHELL,
*Petitioner-Appellant,*

*v.*

## STATE OF OREGON,
*Defendant-Respondent.*

Linn County Circuit Court
16CV06860; A164341

454 P3d 805

A jury found petitioner guilty of one count of possession of methamphetamine. She petitioned for post-conviction relief, claiming inadequate and ineffective assistance of trial counsel under Article I, section 11, of the Oregon Constitution and the Sixth and Fourteenth Amendments to the United States Constitution. Petitioner contends that her trial counsel's closing argument was so poorly done as to rise to the level of a constitutional violation. The post-conviction court ruled that the closing argument was deficient but that petitioner was not prejudiced, and it therefore denied relief. Petitioner appeals, arguing that the post-conviction court erred in concluding that she failed to prove prejudice. The state cross-assigns error to the post-conviction court's conclusion that the closing argument was deficient. *Held*: The post-conviction court erred in denying relief. The closing argument was constitutionally deficient, and, on this record, petitioner was prejudiced.

Reversed and remanded.

Daniel R. Murphy, Judge.

Lindsey Burrows argued the cause for appellant. Also on the briefs was O'Connor Weber LLC.

Christopher A. Perdue, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeHoog, Presiding Judge, and Aoyagi, Judge, and Hadlock, Judge pro tempore.

AOYAGI, J.

Reversed and remanded.

**AOYAGI, J.**

A jury found petitioner guilty of one count of possession of methamphetamine. She petitioned for post-conviction relief, claiming inadequate and ineffective assistance of trial counsel under Article I, section 11, of the Oregon Constitution and the Sixth and Fourteenth Amendments to the United States Constitution. Petitioner contends that trial counsel's closing argument was so ill-advised as to rise to the level of a constitutional violation. The post-conviction court ruled that the closing argument was deficient but that petitioner was not prejudiced, and it therefore denied relief. Petitioner appeals. We conclude that the trial court erred in denying relief and, accordingly, reverse and remand.

FACTS

We are bound by the post-conviction court's factual findings if they are supported by evidence in the record, and we review its legal conclusions for errors of law. *Horn v. Hill*, 180 Or App 139, 141, 41 P3d 1127 (2002). We state the facts in accordance with the standard of review.

The police obtained a search warrant for a large property in Albany, based on information that two men (one of whom is petitioner's nephew) had hidden controlled substances throughout the property. While executing the warrant, police officers found petitioner alone in a camper parked on the property. They removed her from the camper and questioned her. Petitioner admitted that the camper was hers. Asked if they would find anything illegal in it, petitioner said that they would find marijuana. In fact, the police found both marijuana and methamphetamine in the camper. Specifically, they found methamphetamine, marijuana, and prescription medication in a cupboard; a glass vial with water residue and a short straw in a vinyl pouch in a kitchen drawer; and a leather pouch containing methamphetamine in a box under the bed (which box also contained a purse with petitioner's driver's license in it). According to the police, when they told petitioner that they had found methamphetamine in the camper, she said that "she didn't know anything about it but that she would take the blame for it." At trial, petitioner denied having said that.

Petitioner was arrested and charged. She ultimately pleaded guilty to one count of possession of less than one ounce of marijuana, *former* ORS 475.864(3)(c) (2013), *repealed by* Or Laws 2017, ch 21, § 126, and proceeded to a jury trial on one count of possession of methamphetamine, ORS 475.894.

At petitioner's criminal trial, two police officers testified for the state, describing their search of petitioner's camper and the drugs found therein, as well as the questioning of petitioner. Petitioner testified on her own behalf. She explained that she did not live on the property—her mother owned it, and her sister and nephew lived there—but that she kept a camper there for when she visited. When she visited, petitioner said, she spent most of her time in the main house, where her ailing mother lived. Petitioner admitted to sometimes smoking marijuana. She adamantly denied using methamphetamine, however, stating that she has never used it and that she "blame[s] methamphetamine for every problem [her] family has ever had." Petitioner testified that the methamphetamine found in the camper was not hers and that she did not know it was there. She said that she kept the trailer unlocked when she was not there and that multiple people had access to it. Petitioner's boyfriend also testified that petitioner did not use methamphetamine and that he did not know whose methamphetamine it was in the camper.

The state waived its initial closing argument. Defense counsel then gave a closing argument on behalf of petitioner. He started by saying that petitioner had admitted to using marijuana and had pleaded guilty to possession of the marijuana found in the camper. He then reminded the jury that the state thought that it was a "cut and dried case" on the methamphetamine and said:

> "And certainly from our perspective, I mean I've got to be honest with you, there's some red flags there. You know, there was methamphetamine in that camper. It was [petitioner's] pickup. It was her camper that was on top of the pickup. It was her marijuana that was already there. So certainly, you know, it looks like it must be her methamphetamine as well."

Defense counsel suggested, however, that the jury should consider several things. First, he argued that, although "[i]t's certainly very easy to, I think, think that somebody that illegally *** uses marijuana would also do other drugs such as methamphetamine, you know, maybe heroin for that matter," some people only like beer or wine and do not drink rum, and someone who occasionally goes to a rock and mineral show is not necessarily a "full-blown rock hound," so "there are variations on these sort of things" and "degrees to everything." Second, he reminded the jury that the state had to prove that petitioner was aware of the methamphetamine in the camper. Third, he noted that there was evidence that "people were kind of running wild on that property" and hiding things around the property, which "certainly suggests that other people, you know, had access to this area."

Defense counsel then turned to petitioner's own testimony and that of her boyfriend. He stated:

> "[A]gain, this is another one of those red flags is that here's a person that is on trial that has a serious charge against her and she gets up there on the witness stand and so perhaps you should take what she says with a grain of salt, you know, so to speak. Perhaps you should question what she has to say."

He reminded the jury of its instructions on evaluating witness testimony, including that it should "consider the bias or the motives or the interest of the witness and certainly she does have an interest in the outcome of the case." He described the evidence that contradicted petitioner's story and favored the state, but asked the jury to also consider petitioner's testimony about her feelings about methamphetamine, with a caveat:

> "Now certainly, you know, it's easy enough to say that *** those are just some self-serving statements that she was making, she was trying to maybe get sympathy when she said those statements, but *** I guess I ask *** whether you felt that that emotion that she showed when she talked about methamphetamine and how much she was against it, whether there was some grain of genuineness in that."

Defense counsel finished by asking the jury to use its best judgment and to make the best decision it could. The state then gave a fairly short rebuttal closing argument, focusing on the locations in the camper where methamphetamine had been found and poking holes in aspects of petitioner's testimony. The case was submitted to the jury, which returned a guilty verdict.

After an unsuccessful direct appeal, petitioner sought post-conviction relief, claiming inadequate and ineffective assistance of trial counsel. Petitioner's trial counsel testified at the post-conviction trial. He did not defend his closing argument, admitting that it was "awful" and indicating that he had not had enough time to prepare. He said that he has changed his approach to closing arguments since petitioner's trial and has had "better success with trials" since doing so. Asked by the state about the importance of recognizing weaknesses in a case, trial counsel stated his general belief that one must be "completely straightforward" about the facts and not "try to hide anything" when talking to the jury. As for this particular case, trial counsel described the state's case as "[p]retty strong," because petitioner had been alone in the camper where the drugs were found. The defense theory was that someone else had put the methamphetamine in the camper, because "that's what [petitioner] maintained," but, in counsel's view, "there were some real challenges with that argument."

The post-conviction court denied relief. It agreed with petitioner that her trial counsel's closing argument was inadequate. However, it concluded that petitioner had failed to establish prejudice. The court explained:

> "There is no doubt that the closing argument was not well done. Although a defense attorney may make certain concessions in argument to establish credibility with the jury, the defense attorney in this case went beyond that. He repeatedly described reasons to doubt his client's innocence and identified 'red flags' that might cause a jury to convict. Standing alone the closing argument would not be considered adequate.

> "The question for the court is whether this closing argument significantly prejudiced [petitioner], that is, whether

she would likely have prevailed with the jury absent this argument or not.

"As already observed the evidence in this case was highly incriminating of [petitioner]. This court finds that conviction would have been very likely even without this closing argument. The closing argument, as poorly done as it was, did not play a significant role in [petitioner's] conviction because the evidence offered by the state was more than enough to convince a reasonable jury that [petitioner] was in possession (constructive if not otherwise) of the methamphetamine. Her protestations to the contrary just did not have much credibility under the circumstances.

"This court, in short, agrees that the defense closing argument in and of itself is inadequate. However, viewed in light of the entire trial this court cannot find that this one instance of ineffective argument led to [petitioner's] conviction. Therefore, the petition is denied."

Petitioner appeals, arguing primarily that the post-conviction court applied the wrong standard for prejudice. The state cross-assigns error to the post-conviction court's "conclu[sion] that petitioner's counsel performed deficiently by acknowledging the weaknesses in petitioner's case."

## ANALYSIS

Under Article I, section 11, a criminal defendant has the right to adequate assistance of counsel, specifically "'adequate performance by counsel of those functions of professional assistance which an accused person relies upon counsel to perform on his behalf.'" *Docken v. Myrick*, 287 Or App 260, 270, 402 P3d 755 (2017) (quoting *Krummacher v. Gierloff*, 290 Or 867, 872, 627 P2d 458 (1981)).[1]

In reviewing the denial of a post-conviction claim based on inadequate assistance of counsel, the first question is "whether petitioner demonstrated by a preponderance of the evidence that his lawyer failed to exercise reasonable professional skill and judgment." *Montez v. Czerniak*, 355 Or 1, 7, 322 P3d 487 (2014) (citation omitted). "Second, if we conclude that petitioner met that burden, we further

---

[1] We follow our usual practice of addressing the state constitutional claim first and, because it is dispositive, do not reach the federal claim. *See State v. Cookman*, 324 Or 19, 25, 920 P2d 1086 (1996).

must determine whether he proved that counsel's failure had a tendency to affect the result of his trial." *Id*. (citation omitted).

On the first question, "[t]here is no single, succinct, clearly defined standard for determining adequacy of counsel." *Stevens v. State of Oregon,* 322 Or 101, 108, 902 P2d 1137 (1995). "The Oregon Constitution does not give a criminal defendant the right to a perfect defense." *Id*. At the same time, it does require a lawyer to "do those things reasonably necessary to diligently and conscientiously advance the defense." *Id*. In assessing the constitutional adequacy of counsel's performance, we are "careful not to second-guess a lawyer's tactical decisions with the benefit of hindsight; rather we've asked whether those decisions reflected, at the time they were made, a reasonable exercise of professional skill or judgment." *Pereida-Alba v. Coursey*, 356 Or 654, 662, 342 P3d 70 (2015). "A reviewing court gives deference to counsel's tactical decisions in closing argument because of the broad range of legitimate defense strategy at that stage." *Yarborough v. Gentry*, 540 US 1, 6, 124 S Ct 1, 157 L Ed 2d 1 (2003) (internal quotation marks omitted).

In this case, as in most involving inadequate assistance of counsel, there is no dispute that some aspects of trial counsel's representation were constitutionally adequate. The post-conviction court found that trial counsel "did an adequate if not very good job of framing the issues, cross-examining witnesses, etc." Petitioner challenges only one aspect of the representation as constitutionally deficient; that is, the closing argument. We have not previously addressed an inadequate-assistance claim singularly focused on a closing argument. Our existing case law involving closing arguments has arisen in the context of direct appeals. *See, e.g.*, *State v. Stull*, 296 Or App 435, 438 P3d 471 (2019) (prosecutor commented on defendant's courtroom behavior in closing argument); *State v. Brunnemer*, 287 Or App 182, 401 P3d 1266 (2017) (prosecutor criticized defense counsel in closing argument); *State v. Logston*, 270 Or App 296, 347 P3d 352 (2015) (prosecutor commented on the complainant's reputation for honesty in closing argument).

There is no question, however, that closing argument is an important part of trial counsel's representation of a criminal defendant. It is the defendant's final pitch to the jury—an opportunity to explain the evidence that the jury has heard and to try to cast reasonable doubt on the state's case. In the words of the United States Supreme Court:

> "It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole. Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions. And for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt.

> "The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free. In a criminal trial, which is in the end basically a factfinding process, no aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment."

*Herring v. New York*, 422 US 853, 862, 95 S Ct 2550, 45 L Ed 2d 593 (1975) (holding that state law that allowed trial courts to deny closing argument in criminal bench trials violated the right to effective assistance of counsel); *see also, e.g.*, *State v. Barajas*, 247 Or App 247, 268 P3d 732 (2011) (reversing conviction where trial court denied the defendant his closing argument).

We agree with the post-conviction court that the closing argument made in this case was not a reasonable exercise of professional skill and judgment. Contrary to the state's arguments in support of its cross-assignment, this is not a case of defense counsel merely "acknowledging the weaknesses in petitioner's case." Nor is it a case of unartful oratory. Rather, defense counsel strongly presented the state's case, repeatedly suggested that petitioner and her only witness were not credible, and interjected only a few meek points on petitioner's behalf.

Most of the defense's closing argument consisted of defense counsel pointing out that petitioner had admitted to using marijuana and had pleaded guilty to marijuana possession; describing the methamphetamine charge as a "cut and dried case" from the state's perspective; saying that there were "certainly *** red flags" and that the evidence made it "look[] like it must be her methamphetamine"; expressing the view that it is "very easy" to think that someone who uses marijuana would also use other illegal drugs such as methamphetamine and "maybe heroin for that matter"; and describing the evidence favorable to the state. Throughout that rendition, the only two things that defense counsel said in petitioner's favor were (1) that some people only like beer or wine and do not drink rum, and someone who occasionally goes to a rock and mineral show is not necessarily a full-blown rock hound, so "there are variations on these sort of things" and "degrees to everything," thus implying that petitioner might or might not use methamphetamine; and (2) that "people were kind of running wild on that property," which "certainly suggests that other people, you know, had access to this area."

Perhaps the most problematic aspect of the closing, however, was its conclusion. The only witnesses who testified for the defense were petitioner and her boyfriend. Toward the end of closing argument, defense counsel told the jury that he was going to address their testimony, at which point he immediately began questioning their credibility. He referred to "red flags," noted petitioner's interest in the outcome of the case, and said that "perhaps you should take what [petitioner] says with a grain of salt," that "[p]erhaps you should question what she has to say," and that "it's easy enough to say that [petitioner's testimony about her feelings about methamphetamine] are just some self-serving statements that she was making, she was trying to maybe get sympathy when she said those statements." Having built a compelling case to disbelieve petitioner, defense counsel barely responded to his own argument, stating only that "I guess I ask *** whether you felt that that emotion that she showed when she talked about methamphetamine and how much she was against it, whether there was some grain of genuineness in that."

There is no doubt that honesty with the jury and frank efforts to address weaknesses in the defense theory can be part of a sound trial strategy. However, it is not a sound trial strategy to emphasize the strength of the state's case, make almost no argument against conviction, and repeatedly question the credibility of the only defense witnesses. And, indeed, in his testimony at the post-conviction trial, trial counsel admitted that his closing argument was "awful" and suggested that it might have been the result of lack of preparation, rather than an intentional strategy.[2] In any event, whether intentional or not, defense counsel ended up making the state's case for it, offering in counterpoint only a vague reference to "people *** kind of running wild on that property" and a tepid suggestion that there might be a "grain" of truth in petitioner's testimony, and not even asking the jury to find petitioner not guilty. We agree with the post-conviction court that, in this case, defense counsel's closing argument at trial was not an exercise of reasonable professional skill and judgment.[3]

That brings us to the second question, prejudice. Whether trial counsel's deficient closing argument prejudiced petitioner is a question of law "that may depend on the post-conviction court's findings." *Logan v. State of Oregon*, 259 Or App 319, 327, 313 P3d 1128 (2013), *rev den*, 355 Or 142 (2014). To prove prejudice, petitioner had to show that trial counsel's inadequate closing "could have tended to affect the outcome of the case." *Green v. Franke*, 357 Or 301, 323, 350 P3d 188 (2015) (internal quotation marks omitted). "[B]ecause many different factors can affect the outcome of a jury trial, in that setting, the tendency to affect the outcome standard demands more than mere possibility, but less than probability." *Id.* at 322.

---

[2] The parties disagree as to the import of trial counsel's post-conviction trial testimony. Petitioner interprets it to mean that counsel was unprepared and made a "mistake," while the state interprets it to mean that counsel "undertook the strategy consciously, albeit poorly in his view." The post-conviction court made no express or implied finding on whether counsel's approach to closing argument was intentional, but, in any event, the distinction does not affect the disposition in this case. *See Pereida-Alba*, 356 Or at 674 ("the absence of strategic thought or direction on the part of a defense team can constitute inadequate assistance," but "the failure to understand an issue or undertake a particular investigation does not automatically constitute ineffective assistance").

[3] Accordingly, we reject the state's cross-assignment of error.

Petitioner argues that the post-conviction court applied the wrong legal standard for prejudice. As previously quoted, the post-conviction court described the standard as being "whether [petitioner] would likely have prevailed with the jury" absent the closing argument. Applying that standard, the post-conviction court concluded that "the conviction would have been very likely even without this closing argument," that the state's evidence "was more than enough to convince a reasonable jury" of petitioner's guilt, and that petitioner had not proven that the closing argument "led to [her] conviction." In response, the state concedes that the post-conviction court applied the wrong legal standard, but it argues for the same result under the correct standard.

We agree with the parties that the post-conviction court applied the wrong legal standard. *See Green*, 357 Or at 322 ("[W]here the effect of inadequate assistance of counsel on the outcome of a jury trial is at issue, it is inappropriate to use a 'probability' standard for assessing prejudice."). Further, applying the correct legal standard, we conclude that trial counsel's deficient closing argument on petitioner's behalf "could have tended to affect the outcome of the case."[4] *Id*. at 323. That is, there is "more than mere possibility, but less than probability" that it affected the outcome. *Id*. at 322.

In the context of an entire trial, it will be the rare case in which a closing argument, even if done poorly, will be prejudicial. However, in this case, the standard is met. At trial, petitioner never disputed that methamphetamine was found in her camper, so her entire defense came down to

---

[4] In her opening brief, petitioner asked that we remand to the post-conviction court to apply the correct legal standard, but the state responded that we should do it ourselves, and petitioner conceded the point at oral argument. Whether it is more appropriate to remand or decide the issue of prejudice ourselves depends on the circumstances of the particular case. *See Ashley v. Hoyt*, 139 Or App 385, 396, 912 P2d 393 (1996) (delineating the rationales behind each approach). Here, we agree with the state that there is no need for a remand. *See Hale v. Belleque*, 258 Or App 587, 594, 312 P3d 533, *rev den*, 354 Or 597 (2013) (rejecting "contention that the proper remedy is a remand for the post-conviction court to redetermine the question of prejudice, which can be determined in this case as a matter of law"); *Ashley*, 139 Or App at 396 ("[I]f the trial court has rendered findings on all historical facts material to assessing prejudice, this court is fully competent to determine whether petitioner has suffered prejudice of a constitutional magnitude.").

whether the jury believed her that she did not use methamphetamine and had negative feelings about it, did not know about the methamphetamine being in the camper, and made a habit of leaving the camper unlocked when she was not there. In that context, defense counsel not only made a strong argument for the state generally, with little defense counterpoint, but he specifically and repeatedly suggested to the jurors that they should be skeptical of his client's credibility, asking only, at most, that they find a "grain of genuineness" in her testimony about her negative feelings about methamphetamine.[5] It is hard to see how that closing argument, in this case, would not have defeated any chance that petitioner had of an acquittal. The state argues that the evidence against petitioner was so overwhelming that the closing argument could not have tended to affect the outcome of the case. But we must be cautious about saying that the state's evidence was so strong as to preclude any significant chance of acquittal, regardless of counsel's performance. In determining whether an error was prejudicial, we must not "engage improperly in weighing the evidence and, essentially, retrying the case, while disregarding the error committed at trial, to determine whether the defendant is guilty." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Our role is to make "'a legal conclusion about the likely effect of the error on the verdict,'" not "'a finding about how the court views the weight of the evidence of the defendant's guilt.'" *State v. Berry*, 293 Or App 717, 730-31, 429 P3d 1011 (2018) (quoting *Davis*, 336 Or at 32).[6] And, in conducting our analysis, we must be aware of the "distorting effect of hindsight," which includes a risk of "confirmation bias," that is, a risk that, "in hindsight, there may be a tendency to view counsel's errors as having had no effect on

---

[5] Defense counsel also inexplicably injected the suggestion that petitioner might use illegal drugs other than marijuana and methamphetamine, including heroin, which was not at issue and unsupported by the record.

[6] *Davis* and *Berry* address harmlessness, rather than constitutional prejudice, but the cited principle applies equally in this context. *Cf. State v. Dowty*, 299 Or App 762, 775, 452 P3d 983 (2019) ("[T]here appears to be little distinction between an assessment whether a trial court error was 'prejudicial' to a probationer and an assessment of 'harmlessness' in an appeal from a judgment of conviction. And, because defendant's arguments regarding harmlessness provide a helpful context for addressing prejudice, we consider those arguments for their persuasive value regarding prejudice.").

what may seem to have been an inevitable or 'foreordained outcome.'" *Johnson v. Premo*, 361 Or 688, 700, 399 P3d 431 (2017).[7]

In a case that came entirely down to petitioner's credibility, trial counsel's deficient closing argument could indeed have made a difference. It may not be a probability, but it is more than a mere possibility. *See Green*, 357 Or at 322. Accordingly, we reverse and remand.

Reversed and remanded.

---

[7] In *Johnson*, the court explained why, "in the absence of disciplined scrutiny, the distorting lens of hindsight could make a court more likely to view counsel's decisions as inadequate," due to "outcome bias," "but make it less likely to view counsel's errors as having had a tendency to affect the outcome," "due to confirmation bias." 361 Or at 701. Similarly, a former chief justice of the D.C. Circuit has called it "dangerously seductive" to "conflate the harmlessness inquiry with our own assessment of a defendant's guilt," "for our natural inclination is to view an error as harmless whenever a defendant's conviction appears well justified by the record evidence." Harry T. Edwards, *To Err Is Human, But Not Always Harmless: When Should Legal Error Be Tolerated?*, 70 NYU L Rev 1167, 1170 (1995).