Argued and submitted September 27, 2018, reversed and remanded
February 20, 2020

JONATHAN STARBUCK STAU,
*Petitioner-Appellant,*

*v.*

Jeri TAYLOR,
Superintendent,
Eastern Oregon Correctional Institution,
*Defendant-Respondent.*

Umatilla County Circuit Court
CV150898; A163261

461 P3d 255

In this post-conviction case, petitioner was convicted of first-degree robbery. At trial, the only issue was whether petitioner used a gun; the defense theory was that the jury should have reasonable doubt on that issue. After the state's closing argument, which defense counsel considered to be unmoving, petitioner, on counsel's advice, waived closing argument to "forestall a much stronger rebuttal" from the state. The jury convicted petitioner. After an unsuccessful appeal, petitioner sought relief on, among other grounds, the ground that trial counsel's decision to waive closing argument violated his rights to the adequate assistance of counsel under Article I, section 11, of the Oregon Constitution and the effective assistance of counsel under the Sixth Amendment to the United States Constitution. The post-conviction court denied relief, crediting counsel's waiver of closing argument as a reasonable tactical decision. Petitioner appeals, assigning error to the post-conviction court's denial of relief on his adequate assistance claim. He argues that trial counsel was inadequate and ineffective for failing to make a closing argument pointing out the reasons for the jury to doubt whether petitioner had used a gun in committing the robbery and that he "suffered prejudice as a result of counsel's inadequacy." *Johnson v. Premo*, 361 Or 688, 699, 399 P3d 431 (2017). *Held*: The post-conviction court erred in determining that counsel's decision to waive closing argument was the product of reasonable professional skill and judgment, and counsel's waiver could have affected the outcome of the case.

Reversed and remanded.

Patricia A. Sullivan, Senior Judge.

Jason Weber argued the cause for appellant. Also on the brief was O'Connor Weber LLC.

Ryan Kahn, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jonathan N. Schildt, Assistant Attorney General.

Before Lagesen, Presiding Judge, and DeVore, Judge, and James, Judge.

LAGESEN, P. J.

Reversed and remanded.

## LAGESEN, P. J.

Petitioner robbed a Chase Bank in a Fred Meyer store, making off with $7,980. For that conduct, he was charged with, among other things, first-degree robbery. At his trial, it was not disputed that defendant robbed the bank; he was caught fairly quickly with most of the money in hand. What was disputed was whether defendant used a gun. The state's theory was that he had, making defendant's crime first-degree robbery; defendant's theory was that he had not, or, at the very least, that the jury should have reasonable doubt on the point, making his crime third-degree robbery. Defendant's trial counsel, however, waived closing argument out of fear of a strong rebuttal argument by the state and, thus, did not articulate that theory fully to the jury, which convicted defendant of first-degree robbery.

That brings us to the present post-conviction proceeding, in which petitioner seeks relief from his conviction for first-degree robbery on the ground that trial counsel's decision to waive closing argument violated his constitutional rights to the adequate assistance of counsel under Article I, section 11, of the Oregon Constitution and the effective assistance of counsel under the Sixth Amendment to the United States Constitution. The post-conviction court denied relief, concluding that trial counsel made a reasonable tactical decision under the circumstances to waive closing. We conclude otherwise and, further, that trial counsel's failure to make a closing argument prejudiced petitioner for purposes of Article I, section 11. We therefore reverse and remand.

## I.   BACKGROUND

A.   *Underlying Criminal Proceedings*

Defendant was charged with first-degree robbery, among other things, for robbing the Chase Bank. At trial, the primary dispute was whether defendant had used or threatened to use a gun when he told the teller to give him the money. As trial counsel put it in his opening statement:

"My opening statement's going to be short and sweet because the issue in this case is short and sweet. Weapon, or no weapon ladies and gentlemen? [Petitioner] is guilty of

stealing that money. He was apprehended. Subsequently he had the money. Robbery with a weapon, in fact I guess I'll, I'll read what Judge Baker, read again what Judge Baker read to you earlier. On October 31st, in Josephine County, not, not argued by the parties, did unlawfully and knowingly, while in the course of committing theft, with the intent of compelling another to deliver the property, used or threatened the immediate use of physical force upon another and used or attempted to use a dangerous weapon. And it's that part that the parties differ on, and it's that part where we differ on what you just saw. With a robbery with a weapon, the fact finders, and that's you folks, you've got the right to say, *** 'Show me that weapon' and you ain't gonna see that weapon. The best photos you just saw and I, I, and I'm pleased that you're also going to see the, the video in real time. The photos you just saw didn't show you a weapon. [Petitioner] entered the Chase, entered the Chase Bank and an understandably traumatized teller said she saw what she described as a gun. [Petitioner] entered the Chase Bank, put down a note, and you'll see this in real time with the, the actual video, entered, put down the demand note, again understandably, poor [teller] immediately began to comply with that, with that demand note by reaching down into the till and [petitioner] indeed is fumbling with his shirt because he's trying to get out, and you'll see him produce the, the Wal-Mart plastic bag that he's gonna use to take out his money. It didn't take much to, to get her towards the, the money. As she moved immediately towards the money, he's fumbling around for the, for the bag which he produced, which the money was put in. He is later apprehended with the money, with the bag, with the note, but not with any gun. He, the advantage obviously of, to both sides I would suggest, and for you folks in terms of your job as fact finders is that this happened at a bank so we have video. And you're gonna see that video. Stills and video. And as you saw on the, I think the second, second and third stills that Ms. Turner showed you, the view wasn't the same as [the teller's] from here. No, but you've got a pretty clear view of the front of [petitioner]. He wore black jeans, he had some black gym shorts underneath those jeans with a draw string that was tied in front. He was also when he was apprehended, he had a black belt as well. And we believe the evidence will show when you review it, your review of the evidence is gonna show that there was never, never, first of all you're also, or let

me give you this aside, you're not going to hear that there were any overt threats, 'Hey, look at my gun.' The demand note didn't say, 'By the way, I have a gun.' And you're not going to see in any review of video or stills something like a, you know, 'Here, I mean business.' He's fumbling for the bag he subsequently produces. Nothing from the angle, the angles that you're going to see show a shirt being lifted high enough to display a, a gun and handle as described by, by [the teller]. Accordingly, at the conclusion of the case, before you folks get the case for deliberations, there's gonna be, it's gonna be Judge Baker that decides this, depending on the arguments of the, of the attorneys and depending on what the evidence, how the evidence plays out for you folks, Judge Baker may or may not decide to give you what are called lesser included instructions, meaning allowing you to consider charges other than robbery in the first degree. That's a robbery with the, with the use or attempted use of a dangerous weapon. Potentially robbery in the second degree, potentially robbery in the third degree. I'm not gonna go over the definitions of those right now, because you don't know whether you're going to be hearing those, but if you hear robbery in the first degree, and the, you're being asked to conclude beyond a reasonable doubt that there was use, use or attempted use of an actual dangerous weapon, a gun is what [the teller] said, we're going to be expecting you to return a verdict of not guilty. Thank you."

Some evidence supported the state's theory that petitioner robbed the bank using a gun. The teller testified that, after petitioner had handed her a note demanding money, he lifted his shirt, displaying the handle of a gun tucked into his waistband. Surveillance video also showed petitioner lifting his shirt. The teller's 9-1-1 call, which was played in court, reflected that, on the heels of the crime, the teller indicated that petitioner had a handgun.

Other evidence cut against that theory. On cross-examination, the teller admitted that she had only seen the gun for at most a few seconds and did not know if what she saw was a real gun. No gun was visible in the surveillance video, and the video showed that, after he lifted his shirt, petitioner pulled out a plastic bag and placed it on the counter. When petitioner was apprehended, he did not have a gun. No gun was found in the area in which petitioner was

apprehended or elsewhere, although petitioner took a cab away from the scene, so he covered some ground.

After the state rested, the defense called no witnesses. The prosecutor argued in closing that, to acquit petitioner, the jury would have to disbelieve the teller: "[T]o find [petitioner] not guilty, you're gonna have to disbelieve [the teller] that she saw a gun. And there's nothing contradicting that. Nothing. So beyond a reasonable doubt, [the teller] was robbed." Trial counsel did not respond. He waived closing argument for the defense, stating, "We're satisfied Your Honor, we're ready for the jury to be instructed." The trial court instructed the jury, telling it, among other things, that to convict petitioner of first-degree robbery, the state had to prove beyond a reasonable doubt that petitioner "used or attempted to use a dangerous weapon." As noted, the jury found defendant guilty of first-degree robbery. It also found defendant guilty of first-degree theft. The trial court sentenced petitioner to 144 months' incarceration. Petitioner pursued an unsuccessful appeal.

## B.  *Post-Conviction Proceedings*

Following his direct appeal, petitioner initiated the present post-conviction proceeding. In his third claim for relief, petitioner alleged that trial counsel was inadequate and ineffective, in violation of Article I, section 11, and the Sixth Amendment, for waiving closing argument. In response to that claim, the superintendent submitted an affidavit from trial counsel in which counsel explained his reason for waiving oral argument:

"Concerning the Third Claim, I waived closing argument as a strategic matter, after consultation with [petitioner], because of what I considered to be the relative paucity of the prosecutor's first closing argument. Defense attorneys are generally aware that prosecutors typically save their best available points and most forceful appeals for their second or rebuttal closing argument. I recall being particularly struck in [petitioner's] case by what I considered to be the failure of the prosecutor's first closing argument to meaningfully address the solid points about the deficiencies in investigation and proof I believed we had established during the State's case. I was watching the jury closely and believed they were notably unmoved too, even bored,

at least by that first closing argument. As such, I thought it would be of strategic advantage under these narrow circumstances—perhaps the second or third such occasion in many years of trying criminal cases—to forestall a much stronger rebuttal closing and also reinforce the idea that we'd done all we needed to do already for reasonable doubt, even—especially—in view of the State's arguments."

The post-conviction court credited that explanation and denied relief on the third claim, as well as all others. Regarding the third claim, the court explained in its judgment:

"Trial Counsel was not ineffective for failure to offer closing. While unusual, failure to offer a defense closing is not unheard of. This Court is not prepared to find that failure to make a closing is ineffective assistance as a matter of law. Rather, the particular circumstances of the case must be considered in determining if counsel was ineffective. Trial Counsel is able to articulate a clear tactical reason that he felt the closing was weak and he wished to avoid rebuttal to which he would not be able to respond. Counsel did not advise the client beforehand he intended to waive, as the decision was made after hearing the prosecution closing, where many if not all of his arguments were anticipated and articulated by the prosecution. [Petitioner] argues now he decided not to testify based on trial counsel's representations that nothing he could testify that could not be argued in closing. This is not sufficient evidence that counsel was ineffective, particularly in view of the opening arguments, cross-examination of witnesses, and otherwise adequate defense made by trial counsel, and the many factors that come into play in deciding whether a defendant in a criminal matter should testify."

(Record citation omitted.)

Petitioner appealed. On appeal, he assigns error to the post-conviction court's denial of relief on the third claim, as well as one other.[1] He argues that other courts have recognized that only in rare circumstances is it appropriate for defense counsel to forgo closing arguments, and that reasonable trial counsel would have recognized that this case

---

[1] Ultimately, our resolution of petitioner's assignment of error addressing the third claim for relief obviates the need to address the other assignment of error.

did not present those rare circumstances and would have made a closing argument to point out the reasons to doubt whether petitioner had employed a dangerous weapon in committing the bank robbery. Petitioner argues further that the omission of the argument could have tended to affect the outcome of the case. The superintendent responds that the post-conviction court was correct to conclude that, under the circumstances, trial counsel's choice to waive closing was professionally reasonable. The superintendent argues alternatively that, even if trial counsel's decision to waive closing was deficient, the omission of argument did not prejudice petitioner.

## II.   STANDARD OF REVIEW AND GENERAL LEGAL STANDARD

We review a post-conviction court's grant or denial of relief for legal error, accepting the court's implicit and explicit factual findings if there is evidence to support them. *Green v. Franke*, 357 Or 301, 312, 350 P3d 188 (2015). At issue in this matter are parallel claims of inadequate assistance of trial counsel under Article I, section 11. To establish that his trial counsel rendered inadequate assistance for purposes of Article I, section 11, petitioner was required to prove two elements: (1) a performance element: that trial counsel "failed to exercise reasonable professional skill and judgment"; and (2) a prejudice element: that "petitioner suffered prejudice as a result of counsel's inadequacy." *Johnson v. Premo*, 361 Or 688, 699, 399 P3d 431 (2017).[2]

## III.   ANALYSIS

We start and, as it turns out, finish with petitioner's claim of inadequate assistance of counsel under the Oregon Constitution. In evaluating whether counsel's decision to omit closing argument comported with Article I, section 11, we examine it under the circumstances that confronted counsel at the time he made it. That is, whether counsel's decision "reflects an absence of reasonable professional skill and judgment turns on the facts known to counsel at the

_____

[2] As mentioned, petitioner also raises a claim under the Sixth Amendment. Because we conclude that petitioner is entitled to relief under the Oregon Constitution, we do not set forth or discuss further the federal standard.

time that [he] made that decision." *Cartrette v. Nooth*, 284 Or App 834, 841, 395 P3d 627 (2017).

This appeal, in particular, implicates decision making about closing argument. In evaluating the reasonableness of counsel's closing argument strategy, we keep in mind the central and important function that closing argument serves in a criminal case. "There is no question * * * that closing argument is an important part of trial counsel's representation of a criminal defendant. It is the defendant's final pitch to the jury—an opportunity to explain the evidence that the jury has heard and to try to cast reasonable doubt on the state's case." *Mitchell v. State of Oregon*, 300 Or App 504, 511, 454 P3d 805 (2019). As we noted in *Mitchell*, the Supreme Court has explained:

> "'It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole. Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions. And for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt.'

> "'The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free. In a criminal trial, which is in the end basically a factfinding process, no aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment.'"

*Mitchell*, 300 Or App at 511 (quoting *Herring v. New York*, 422 US 853, 862, 95 S Ct 2550, 45 L Ed 2d 593 (1975) (concluding that state law permitting court to deny closing argument in bench trials violated the Sixth Amendment right to counsel)). In view of the pivotal role of closing argument in the criminal process, we agree with other courts that it is a rare case in which the decision to forgo closing argument will comport with the constitutional standards governing the performance of criminal trial lawyers. *See, e.g., People*

*v. Wilson*, 392 Ill App 3d 189, 199-200, 911 NE2d 413, 422, *appeal den*, 234 Ill 2d 550 (2009).

This is not that rare case. Trial counsel's desire to forestall a strong rebuttal by the prosecutor may have been a reasonable objective. But he based his decision to give up closing argument in part on his view that "we'd done all we needed to do already for reasonable doubt, even—especially—in view of the state's arguments." That assessment—that he had done all he needed to on the point of reasonable doubt—does not represent a reasonable assessment of where the case stood, given how the trial had unfolded.

The defense theory of the case was that the jury should have reasonable doubt about whether defendant used a gun to rob the bank. By the time of closing argument, however, that theory had not been presented to the jury in any clear way. In his opening statement, counsel told the jury that the issue for decision was "[w]eapon, or no weapon." This argument suggested—somewhat misleadingly—that the jury's task was either to find affirmatively that there was a weapon or, instead, to find affirmatively that there was not a weapon. In other words, it did not tell the jury that its real task was to assess how confident it was in the state's case about the weapon.

The state's closing argument reiterated that theme in a way, also suggesting that the jury had to make some sort of affirmative findings to acquit petitioner. Specifically, the prosecutor told the jury that, to find defendant not guilty, it would have to find that the teller was not credible, something it should not do because there was no evidence contradicting the teller's testimony about the gun. Those arguments did not inform the jury that its task was somewhat different, that it was not required to find affirmatively that no gun was involved, or that the teller was not believable, but, instead, to determine whether it was convinced beyond a reasonable doubt that petitioner had used or threatened to use a dangerous weapon during the robbery.

It was under these circumstances that counsel made the decision that closing argument was not needed, and these circumstances that make counsel's determination to

forgo closing argument—his "last clear chance to persuade the trier of fact that there may be reasonable doubt" about petitioner's guilt, *Herring*, 422 US at 862—not the product of reasonable professional skill and judgment. Simply put, it was not reasonable for counsel to conclude that "we'd done all we needed to do already for reasonable doubt" when the jury had not been told that the real issue before it was whether it should have doubt in the state's case about the weapon. The post-conviction court erred in determining that counsel's decision to waive closing argument was the product of reasonable professional skill and judgment.

The remaining question is whether trial counsel's decision to omit closing argument prejudiced petitioner, that is, "'could have tended to affect the outcome of the case.'" *Mitchell*, 300 Or App at 514 (quoting *Green*, 357 Or at 323). That standard is met when there is "'more than mere possibility, but less than probability'" that the relevant act or omission by trial counsel affected the outcome. *Id.* (quoting *Green*, 357 Or at 322).

We conclude that standard is met here. Although the jury was properly instructed that it had to find each element of first-degree robbery beyond a reasonable doubt, including the element that petitioner "used or attempted to use a dangerous weapon," defense counsel failed to explain how that instruction related to the defense theory of the case. In particular, the jury was not presented with a clear statement that the issue was whether it should have reasonable doubt about that element. Further, counsel's opening statement suggested incorrectly that the jury might have to find affirmatively that there was no weapon involved, rather than simply having doubt about the presence or the use or attempted use of the weapon. Moreover, the state's closing argument suggested incorrectly that it would have to disbelieve the teller's testimony, rather than just have doubts about her perception, to acquit petitioner. Finally, the omission of closing argument meant that no one pointed out to the jury all the reasons it might have reasonable doubt whether petitioner had a gun, despite the teller's perception of one. Instead, the jury was left on its own to navigate the evidence—from a trial that spanned two days—to identify and recall those reasons. For these reasons, we conclude

that there is more than a mere possibility that trial counsel's decision to give up the "last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt" affected the jury's verdict of guilt in this case. *Herring*, 422 US at 862.

Reversed and remanded.